*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


**OPINION**

No. 04-07-00203-CR

Vicente **REYES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-6988
Honorable Sharon MacRae, Judge Presiding

Opinion by:   Rebecca Simmons, Justice

Sitting:      Catherine Stone, Justice
              Sandee Bryan Marion, Justice
              Rebecca Simmons, Justice

Delivered and Filed:   August 6, 2008

AFFIRMED

Appellant Vicente Reyes was convicted by a jury on five counts of aggravated sexual assault and indecency with a child. On appeal, Reyes argues that the trial court erred in: (1) designating the outcry witness; (2) admitting the testimony of the State's medical expert; and (3) failing to hold a pretrial taint hearing regarding the outcry testimony and the child's testimony. We affirm the judgment of the trial court.

**FACTUAL BACKGROUND**

After her sister made allegations of sexual abuse, nine year old S.O. and her two sisters were removed from their home and placed in foster care. Even though S.O. initially denied any sexual contact, she was assigned a caseworker by Child Protective Services ("CPS"), examined by a doctor at Bexar County Child Safe, and ultimately interviewed by a CPS investigator. All three individuals testified at trial. Additionally, S.O. took the stand and testified about sexual abuse committed, over a period of three years, by Reyes, her stepfather.

During a pretrial hearing, Reyes's defense counsel argued S.O.'s outcry statement and subsequent statements were unreliable because her recollection of events had been stimulated and materially influenced by the way in which she was questioned. As examples of the improper stimulation, Reyes argued that, over six months before her outcry, CPS caseworker Kathy Openshaw showed S.O. videotapes about honesty and being "brave enough" to tell the truth. Additionally, Openshaw read S.O. a book entitled "Good Touch, Bad Touch," describing different emotions associated with different types of touching and showed her videotapes depicting different scenarios and what a child should do if someone's actions created a feeling of discomfort for the child. Finally, Reyes argues that Openshaw provided S.O. a copy of a workbook containing lists of feelings and how to define sexual abuse, as well as discussing bodily fluids.

Although not definitive for sexual abuse, S.O.'s physical examination at Child Safe was considered abnormal revealing S.O. had "very little hymen at six o'clock." According to Openshaw, after explaining to S.O. that her examination indicated there had been some abuse, S.O. acknowledged the sexual abuse but the conversation was limited to S.O.'s emotions and did

not reveal any specifics with regard to the abuse itself. Three days later, S.O. made a detailed, but not complete, outcry to CPS Investigator Caroline Briones.

After conducting a pre-trial hearing regarding the admissibility of the outcry statement, the trial court refused Reyes' request to conduct a separate reliability hearing and also refused to exclude the child's statements. At trial, the defense called Dr. Joann Murphey, a clinical psychologist specializing in sexual abuse, who testified that Openshaw's techniques involved a "critical mistake" exceeding the "bounds of acceptable professional standards of care."

The jury found Reyes guilty on five counts of aggravated sexual assault of a child and two counts of indecency with a child. This appeal followed.

### PROPER OUTCRY WITNESS

The parties agree that the State provided timely notice to Reyes that it intended to call Briones as the outcry witness and provided a summary of the outcry statement. TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(b)(1-3) (Vernon 2005) (requiring (1) State provide timely notice; (2) trial court conduct a hearing outside the presence of the jury; and (3) child testify or be available to testify). During the 38.072 hearing, and on appeal, Reyes contends the trial court improperly designated Briones as the outcry witness because she was not the first person over eighteen to whom S.O. spoke about the offense, and her statements were, therefore, inadmissible hearsay.

### A. Texas Code of Criminal Procedure Article 38.072

Article 38.072 allows for the admission of otherwise inadmissible hearsay in the prosecution of offenses committed against children twelve years and younger. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon 2005). The statute requires the statements be made: (1) by the child against whom the offense was allegedly committed; and (2) to the first person,

eighteen years of age or older, to whom the child made a statement about the offense. *Id*. at § 2(a). To qualify as an outcry statement under article 38.072, the statement must be more than a general allusion of sexual abuse and the child must have described the alleged offense in some discernible way, that being "more than words which give a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). Simply put, the outcry witness is the first adult to whom the child tells "how, when, and where" of the assault. *See Hanson v. State*, 180 S.W.3d 726, 730 (Tex. App.─Waco 2005, no pet.).

A trial court has broad discretion in determining the admissibility of the proper outcry witness. *Garcia*, 792 S.W.2d at 92. The exercise of that discretion will not be disturbed unless a clear abuse of that discretion is established by the record. *Id*.; *see also Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (stating that a trial court abuses its discretion when its ruling is outside the "zone of reasonable disagreement").

## B.     Testimony of Openshaw and Briones

Openshaw, a social worker and director for the emergency shelter at the Baptist Child and Family Services, was contacted by Bea Martinez, a CPS caseworker, to assess whether any abuse had occurred with regard to S.O. and to facilitate S.O.'s feelings about being separated from her family and her adjustment to her foster home. Openshaw first saw S.O. on September 25, 2001 and described her as anxious, scared and admittedly sad. Openshaw further testified that at some point between her first and second visits with S.O., she learned that S.O.'s physical examination at Child Safe "validated" the presence of sexual abuse. As expected, Openshaw questioned S.O. about the examination:

> I basically started talking to her about the fact that I knew she had gone for an
> evaluation and, you know, were there things about that that she wanted to talk
> about. She indicated that that was hard for her to talk about. I said to her that,
> you know, sometimes even though it's hard for you to talk, your body can speak

for you, and in this case your body has and the results of some of these evaluations indicated that abuse did occur.

During that session, S.O. acknowledged that she had been abused, but Openshaw testified that she intentionally did not ask any further questions and instead only spoke to S.O. in generalities. "I really wanted to avoid getting details and getting into that part of that with her . . . My job was merely to deal with the feelings and concerns that she might have about that."

Briones, on the other hand, testified that she only met ten-year-old S.O. one time, during an interview in October of 2001. She explained that, to her knowledge, she was the first person to interview S.O. regarding the details of the allegations. As was the protocol at CPS, Briones was called upon "[t]o ascertain if anything was occurring to [S.O.] so that she could be safe and also to proceed accordingly for the actual investigator, whether they needed to make a report to law enforcement, if therapy regarding specific sexual abuse issues would be needed, those kinds of things." Briones explained that she followed specific guidelines during her interview with S.O., including making sure the child understood that everything she said had to be the truth. S.O. told Briones that she had been sexually abused by Reyes. According to Briones, S.O. gave her a detailed description of Reyes making her touch his penis and subsequent penetration. S.O. further described the pain associated with the penetration and how Reyes told her that he was sorry and "wouldn't do it again."

## C.    Analysis

The trial court held a hearing outside the presence of the jury to determine the proper outcry witness.[1] In *Garcia*, the court indicated that the record must clearly show that the victim described the offense to the witness. *Garcia*, 792 S.W.2d at 91. The record substantiates that

---

[1] Only Briones, not Openshaw testified at the hearing. The trial court did, however, consider: (1) Openshaw's notes; (2) a videotape of Briones' interview; and (3) presumably the foster mother's statement attached to the State's Notice of Intent to Present Outcry Statement.

S.O.'s statement to Openshaw did not describe the alleged offense with any specificity, i.e., the "how, when, or where" appellant touched her, but was instead a general confirmation of the sexual abuse. *Id.*; *see also Smith v. State*, 131 S.W.3d 928, 931 (Tex. App.—Eastland 2004, pet. ref'd) (child's statement to mother that appellant had been performing oral sex on him did not relay any specific details about the charged offense for purposes of determining proper outcry witness); *Castelan v. State*, 54 S.W.3d 469, 475-76 (Tex. App.—Corpus Christi 2001, no pet.) (grandmother was not proper outcry witness because victim did not relay specific details of the abuse but only stated appellant "put his thing in through the back").

Briones, on the other hand, testified that S.O.'s statement, including the details of the alleged abuse, was very descriptive. The State confined its examination of Openshaw to what she asked S.O. and allowed Briones to testify regarding the specifics of the sexual assault. The record indicates the trial court thoroughly considered the testimony, the attached statements and evidence, and argument of counsel before designating Briones as the outcry witness. While it is clear that S.O. first told Openshaw about the incident, the trial court could have concluded that S.O. did not tell her any sufficient details of Reyes's conduct. Contrary to Reyes's assertion, this case does not present a scenario in which the trial court erred by permitting outcry testimony from multiple witnesses. *See Hernandez v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd). Accordingly, we cannot conclude the trial court abused its discretion and we overrule this issue.

### TESTIMONY REGARDING INCONCLUSIVE MEDICAL EXAMINATION

In issue three, Reyes asserts that the trial court erred in allowing Dr. Nancy Kellogg to testify in support of S.O.'s credibility, arguing that Dr. Kellogg's testimony was clearly a comment on the truthfulness of the child. The State contends that at trial, the objection was

based on the medical examination's lack of physical evidence in accordance with *Salinas v. State*, 166 S.W.3d 368, 370-71 (Tex. App.—Fort Worth 2005, pet. ref'd) (in absence of physical evidence, medical doctor's diagnosis of sexual abuse solely on the history provided by the child was an abuse of discretion). However, because Reyes also argued before the trial court that the testimony was "bolstering," we address this issue on appeal.

## A. Standard of Review

We review the trial court's decision to admit or exclude scientific expert testimony under an abuse of discretion standard. *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). The trial court abuses its discretion if it acts without reference to any guiding rules and principles. *Montgomery*, 810 S.W.2d at 380. Thus, we will uphold the trial court's decision as long as it is within the zone of reasonable disagreement, given the evidence presented and the requirements of Rule 702 of the Texas Rules of Evidence. *Sexton*, 93 S.W.3d at 99.

## B. Texas Rule of Evidence 702

The trial court is guided by Texas Rule of Evidence 702 in determining whether expert testimony should be admitted. TEX. R. EVID. 702. Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." *Id.*; *Duckett v. State*, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990), disapproved on other grounds, *Cohn v. State*, 849 S.W.2d 817 (Tex. Crim. App. 1993) (noting that to be admissible, expert testimony must "assist" the trier of fact). Expert testimony does not assist the jury if it constitutes "a direct opinion on the truthfulness" of a child victim's allegations. *Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993) (testimony regarding an opinion of truthfulness "does more than 'assist

the trier of fact to understand the evidence or to determine a fact in issue'; it *decides* an issue *for the jury.*").  An expert may testify that the witness exhibits symptoms consistent with sexual abuse, but not that a witness is truthful.  *Cohn*, 849 S.W.2d at 818-19.

Even if admissible under Rule 702, evidence must still be relevant—it must make the existence of a fact of consequence more or less probable than it would be without the evidence.  TEX. R. EVID. 401.  A court may also admit expert testimony that a child exhibits behavioral characteristics that have been empirically shown to be common among children who have been abused under Rule 702.  *Perez v. State*, 113 S.W.3d 819, 832 (Tex. App.—Austin 2003, pet. ref'd).  Relevance, however, requires that the expert witness tie or relate the pertinent facts of the case to the subject of her testimony.  *Morales v. State*, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000).

## C.      Testimony of Dr. Nancy Kellogg

Dr. Nancy Kellogg, the medical director at Child Safe, testified regarding her extensive background in the field of child abuse, including the examination of between eight and nine thousand children.  Dr. Kellogg's sole contact with S.O. was during an examination on April 4, 2001, based on a referral from Child Protective Services.  Dr. Kellogg opined that the exam was abnormal, particularly with regard to the hymen at the six o'clock position.  Although she explained that it was not an acute finding, i.e., there was no bruising or bleeding, Dr. Kellogg saw evidence of "something that was already healed over."  She considered the examination abnormal with a concern for penetration into S.O.'s hymen caused by trauma.  She further explained to the jury that this examination was in the ten percent range of the children that she examines.  Although not definitive, Dr. Kellogg testified that her findings were consistent with

"trauma caused by penetration of [S.O.]'s sexual organ with the male sexual organ of another individual."

Dr. Kellogg further testified that she did not discuss any sexual abuse with S.O. or ask her any questions regarding the same. However, based on her experience, she explained that "delay in [sexual abuse] disclosure is pretty common," as is wanting to go back and live with the abuser as an attempt to keep the family together. With regard to outcry, Dr. Kellogg testified that many children will initially deny that anything happened and then gradually give little pieces to "test the water," then wait and see what happens before they "show all their cards."

**D.     Analysis**

Reyes appears to complain that, because Dr. Kellogg used the word "truth" in some of her answers, her testimony amounted to a comment on the veracity of the S.O.'s allegations. Reviewing the entire record, Dr. Kellogg's statements explained how she interviews children and the steps taken to ask nonleading questions and allow the child to tell her story. *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (holding that, to be considered reliable, expert testimony must be based on proper application of valid techniques).

As for Reyes's complaint that Dr. Kellogg commented on S.O.'s truthfulness, we disagree. In the present case, there is no evidence that Dr. Kellogg testified that the victim was truthful or that sexual abuse victims, as a class, are truthful. To the contrary, Dr. Kellogg testified that, although not definitive, S.O.'s physical condition was consistent with the abuse she later described. Here, the subject of Dr. Kellogg's testimony was the physical condition of S.O. at the time of her examination and a further explanation of why a delay in reporting the abuse is not uncommon. She described her observations of S.O. and explained how S.O.'s physical condition was consistent with the reported assault. Dr. Kellogg did not testify that S.O. was

abused or that she was telling the truth. Pursuant to Rule 702, it was permissible for Dr. Kellogg to testify regarding behavioral characteristics common among abused children and to give her expert opinion that S.O.'s examination was consistent with penetration. TEX. R. EVID. 702. Accordingly, we overrule this issue on appeal.

### RELIABILITY OF CHILD'S OUTCRY STATEMENT AND TESTIMONY

In the first two issues raised in his brief, Reyes contends that the trial court erred by failing to conduct a pre-trial taint hearing to determine whether the child's outcry statement was admissible as required by *State v. Michaels*, 642 A.2d 1372 (N.J. 1994), More specifically, Reyes argues the State's interview techniques undermined the reliability of the child's outcry statement and trial testimony and the trial court erred in failing to hold a pretrial hearing to determine the admissibility of both forms of evidence. Notably, Reyes is not complaining about the admission of any specific testimony, but the lack of a separate procedure to weigh the reliability of the testimony before it is presented to the jury. Reyes contends that if such a procedure had been utilized, evidence of the outcry and S.O.'s testimony would have been excluded.

**A.**     *State v. Michaels*

Reyes points to *Michaels*, 642 A.2d at 1379, for the proposition that "the use of coercive or highly suggestive interrogation techniques can create a significant risk that the interrogation itself will distort the child's recollection of events, thereby undermining the reliability of the statements and subsequent testimony concerning such events." The *Michaels* Court noted that statements resulting from suggestive or coercive interview techniques could potentially implicate "principles of constitutional due process." *Id*. at 1380. A *Michaels* analysis provides that once the defendant establishes "some evidence" that the victim's statements were the product of

suggestive or coercive interview techniques, the burden shifts to the State to prove reliability of proffered statements and testimony by clear and convincing evidence. *Id.* at 1383.

**B.      Analysis**

In Texas, the jury is the exclusive judge of the credibility of the witnesses and the weight to give their testimony, and it is the exclusive province of the jury to reconcile conflicts in the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *see also Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (noting that an appellate court must give deference to the jury's determination of the weight and credibility of witness testimony). The jury is free to accept or reject any part of a witness's testimony. *Lackey v. State*, 819 S.W.2d 111, 116 (Tex. Crim. App. 1989). Reliability of the techniques used during a child's interview is dependent on an evaluation of the credibility and demeanor of witnesses. *See Hernandez v. State*, 957 S.W.2d 851, 852 (Tex. Crim. App. 1998).

Reyes is unable to provide support for his suggestion that the trial court must conduct a pre-trial taint hearing as prescribed by *Michaels*, 642 A.2d at 1380. Here, the trial court conducted an article 38.072 hearing as required by the Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 38.072(2)(b).[2] During such, the trial court evaluated the testimony of Briones, her techniques and Openshaw's notes. In admitting the testimony, the trial court implicitly found that the testimony complied with not only article 38.072, but also the Texas Rules of Evidence. The issues raised are clearly those of credibility—the credibility of Openshaw, Briones and even S.O. The evidence was evaluated in light of all the testimony presented at trial, including that of defense witness Dr. Joanne Murphey's express concerns that the interview methods led to S.O.'s allegations of sexual abuse.

---

[2]    Section 38.072(2)(b)(2) requires the trial court to conduct a hearing outside the presence of the jury, in order to determine "that the statement is reliable based on the time, content, and circumstances of the statement." TEX. CODE CRIM. PROC. ANN. § 38.072(2)(b)(2) (Vernon 2005).

Accordingly, evidence of "leading" questions or suggestive interview techniques imposed on S.O. was before the members of the jury to assist in their credibility assessments. The trial court complied with the requirements of article 38.072, and the defense was allowed full and complete cross-examination of the witnesses. The complaints raised by Reyes are simply questions of credibility of the witnesses. Because credibility rests exclusively with the jury, we decline the invitation to adopt the *Michaels* procedure, and overrule these two issues on appeal. *Wesbrook*, 29 S.W.3d at 111.

## CONCLUSION

The trial court properly allowed Investigator Caroline Briones to testify as the outcry witness in accordance with article 38.072 and allowed Dr. Nancy Kellogg to opine as to the medical findings of S.O. and behavioral characteristics regarding sexually abused children. Additionally, we decline to impose a mandate that the trial court hold a pre-trial taint hearing as prescribed in *State v. Michaels*, 642 A.2d 1372 (N.J. 1994). The evidence was properly admitted under the Texas Code of Criminal Procedure and the Texas Rules of Evidence. We, therefore, affirm the judgment of the trial court.

Rebecca Simmons, Justice

Publish