# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00505-CR

**Billy Denzel Shell, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 59,953, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Billy Denzel Shell of aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B) (West Supp. 2008). He was sentenced to eight years in prison. Shell contends that the district court erred by admitting a nurse's examination report and challenges the sufficiency of the evidence to prove an extraneous offense. We affirm the judgment of conviction.

On March 16, 2006, R.G., who was 12 years old, attended a barbecue with some friends. At the barbecue, she and her friends were introduced to several males, including Shell. R.G. and one of her friends accepted a ride home with Shell. Also in the car were two unknown males. After Shell had dropped everyone off but R.G., he engaged in nonconsensual sex with her and then dropped her off at the end of her street.

After initially declining to answer questions about what had happened that night, R.G. wrote a letter to her father two or three days later telling him what had happened. Her father took her to the Killeen Police Department to report the rape.

About three months later, a pediatrician in Killeen referred R.G. to the sexual assault program at Scott and White in Temple. At Scott and White on June 21, 2006, R.G. was examined by a sexual assault nurse examiner (SANE), who prepared a report. At trial, the SANE report was admitted over Shell's objection.

A jury convicted Shell as charged and sentenced him to eight years in prison. Shell appeals.

In his first point of error, Shell contends that the district court erred by admitting the SANE report, arguing that the report was intended not to assist the jury in understanding the evidence, but to improperly bolster R.G.'s credibility.[1] We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). Unless the trial court's decision was outside the zone of reasonable disagreement, we uphold the ruling. *Id.*; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

Expert testimony may be admitted pursuant to Rule 702 of the rules of evidence:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

---

[1] Although Shell initially seems to complain only of the admission of the SANE report, his argument suggests that he is complaining not of the report itself but of the accompanying testimony of Dr. Pamela Sue Greene. Shell objected to both at trial.

Tex. R. Evid. 702. Expert testimony is inadmissible, however, even under Rule 702, if the testimony "decides an ultimate fact for the jury," including a "direct opinion on the truthfulness of a child." *Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993) (quoting *Duckett v. State*, 797 S.W.2d 906, 915 (Tex. Crim. App. 1990)). In the context of a sexual assault, an expert may testify that the witness exhibits symptoms consistent with sexual abuse, but not that a witness is truthful. *Cohn v. State*, 849 S.W.2d 817, 818-19 (Tex. Crim. App. 1993).

During her testimony, Dr. Pamela Sue Greene read R.G.'s history from the SANE report:

> I was in a car with Billy. He stopped the car. He got in the backseat and grabbed my pants and panties and tried to pull them down. I was trying to open the door to get out. I was pushing him off and telling him no. Finally, he got my pants down and put his penis into my vagina. It hurt. I bled some that night but I thought it was my period.

In addition to reading from the SANE report, Dr. Greene testified that her findings were consistent with a sexual assault. Shell specifically complains of testimony that he characterizes as follows: "[I]n her opinion, based on her training and experience, the tear on the hymen was consistent with her [R.G.'s] account of sexual assault." Shell objects to these specific statements, arguing that information was conveyed in a manner that amounts to impermissible bolstering. According to Shell:

> The appropriate testimony elicited from Dr. Greene should have been that the findings were consistent with an allegation of sexual assault with a penis. This would eliminate the jury from deducing that the defendant was the individual who committed the act because the complaining witness said so.

3

Contrary to Shell's assertion, however, Dr. Greene never testified that the findings of her exam of R.G. were consistent with R.G.'s account of the assault. Rather, Dr. Greene testified that the findings were consistent with R.G.'s history:

> Well, in, you know, a 13-year-old who had—has never had sex, she's never used tampons, she has a history that someone put a penis in her vagina, we would say that these findings would support her history.

Nothing in this testimony is a comment on the doctor's opinion about the truth of R.G's account of the assault. Rather, Dr. Greene testified that her findings were consistent with the history reported by R.G.—that, for a 13-year-old girl who had never had sex or used tampons, the "medical evidence [was] consistent with the male sexual organ and penis entering the vagina." Dr. Greene's testimony never suggests that the jury should deduce that "the defendant was the individual who committed the act." The testimony merely conveys that findings from R.G.'s medical exam were "consistent with an allegation of sexual assault with a penis," exactly the testimony that Shell argues would have been appropriate.

Shell relies chiefly on *Reyes v. State*, 274 S.W.3d 724 (Tex. App.—San Antonio 2008, no pet.), attempting to distinguish it to support his position that Greene's testimony improperly bolstered the testimony of R.G. According to Shell, his case is distinguishable from *Reyes* because here "the Appellee is attempting to have the expert witness 'vouch' for the truthfulness of the complaining witness to mislead the jury into believing that the expert believes the account given by the complaining witness."

*Reyes* involved a conviction for aggravated sexual assault of a child. 274 S.W.3d at 726. Reyes challenged the testimony of a doctor who had examined the child following the assault. *Id.* at 730. The doctor's testimony was similar to that of the Dr. Greene's in the case at bar: the exam was abnormal, particularly with regard to the hymen at the six o'clock position, and these findings were consistent with "trauma caused by penetration of [the victim]'s sexual organ with the male sexual organ of another individual." *Id.* According to Reyes, this and other testimony amounted to a comment on the child's truthfulness. *Id.* The court of appeals, however, concluded that the doctor's testimony was in no way a comment on the child's truthfulness, explaining that, "[p]ursuant to Rule 702, it was permissible for [the doctor] to testify regarding behavioral characteristics common among abused children and to give her expert opinion that [the victim]'s examination was consistent with penetration." *Id.*

As in *Reyes*, Dr. Greene was permitted to testify that the findings of R.G.'s examination "were consistent with the male sexual organ and penis entering the vagina." We conclude that Dr. Greene's testimony did not amount to improper bolstering. We overrule Shell's first point of error.[2]

In his second point of error, Shell challenges the sufficiency of the evidence to support an unadjudicated extraneous offense admitted during the punishment phase of trial. We review the sufficiency of the proof of an extraneous offense introduced at the punishment stage

---

[2] At trial, Shell also objected to the evidence on the grounds that it was hearsay and irrelevant and that its probative value was outweighed by its potential prejudicial effect, but Shell raises none of these additional grounds on appeal.

by reviewing the trial judge's threshold ruling on admissibility for an abuse of discretion. *Malpica v. State*, 108 S.W.3d 374, 378-79 (Tex. App.—Tyler 2003, no pet.).

The State asserts that Shell has failed to preserve error on this issue by failing to object to the admissibility of the evidence when it was offered and admitted. As the State suggests, Shell made no objection to the sufficiency of the evidence of the offense. Rather, Shell objected to the admissibility of evidence of the offense on the grounds that the offense had not resulted in a conviction or been prosecuted to a final judgment. The code of criminal procedure imposes no such requirement, however. *See* Tex. Code Crim. Proc. Ann. art. 37.07(3)(a) (West Supp. 2008). Evidence of an extraneous offense may be admitted as long as the trial court determines that a jury could find beyond a reasonable doubt that the defendant committed the offense, "regardless of whether he has previously been charged with or finally convicted of the crime or act." *Id.* Here, pursuant to section 37.07(3)(a), the district court properly admitted evidence of the extraneous offense even though there had been no final conviction.

At trial, Shell cited no additional grounds for objecting to the introduction of evidence of the extraneous offense and has, therefore, failed to preserve additional grounds of error. *See* Tex. R. App. P. 33.1. Even if Shell had objected to the admission of the evidence on sufficiency grounds, however, evidence of the extraneous offense was properly admitted, as the jury could have found beyond a reasonable doubt that Shell committed the offense. *See Malpica*, 108 S.W.3d at 379 ("If the judge is satisfied that there is evidence upon which a rational jury could find beyond a reasonable doubt that the defendant committed the extraneous misconduct, the defendant, in order to preserve error, must object to the introduction of the evidence of the extraneous bad act.").

6

The State introduced evidence of the extraneous offense through the testimony of Officer Brandon Buttram. According to Buttram, on March 25, 2006, he was called to a club in Harker Heights in response to a fight. When Buttram arrived at the club, a man who initially identified himself as Desmon Shell was verbally abusing and threatening the club's staff. When Buttram questioned Shell after discovering an outstanding warrant for the arrest of Desmon Shell, Shell admitted that Desmon Shell was his brother and properly identified himself as Billy Shell. Buttram arrested Shell for failure to identify. *See* Tex. Penal Code Ann. § 38.02 (West Supp. 2008). According to Buttram, before directing Shell to the patrol car, Buttram pulled the back seat out of the car to be sure that nothing was there, and he found nothing. After driving Shell to the police station and going inside, Buttram asked Shell if he had left anything in the car. Shell stated that he had left some lip balm. When Buttram again searched the back seat, he found the lip balm and a blue pill, which was subsequently identified as MDMA, also known as ecstasy.

In support of his argument that no rational trial of fact could find beyond a reasonable doubt that Shell possessed a controlled substance, Shell points to Buttram's testimony on cross examination. Buttram testified that he handcuffed Shell's hands behind his back and observed nothing in Shell's hands at that time. Buttram also admitted that, although Shell was placed in the car on the passenger side and remained there, the pill was found behind the driver's seat. Buttram never saw the pill in Shell's possession and further testified that he did not see Shell make any "furtive gesture."

In similar circumstances, courts have determined that the type of evidence presented through Buttram's testimony is sufficient to allow a rational fact-finder to determine beyond a

7

reasonable doubt that the defendant committed the offense. In *Williams v. State*, 784 S.W.2d 428 (Tex. Crim. App. 1990), Williams was arrested for failure to identify. Officers patted him down, checked the waistband of his pants, and cuffed his hands behind his back. *Id.* at 429. When the officers drove Williams to the police station, one of the officers sat in the back seat with Williams. *Id.* That officer testified that he saw Williams fidgeting but never saw him put his hand inside his pocket or his waistband, and the pants appellant was wearing had no rear pockets. *Id.* After officers took Williams inside the police station, they removed the back seat and found four rocks that were later identified as cocaine. *Id.* The officers testified that before their shift began, they had removed the back seat and had found no foreign objects. *Id.* Based on this evidence, the Beaumont Court of Appeals reversed the jury's conviction. *Id.* at 428. The Court of Criminal Appeals, however, reversed the Beaumont Court and affirmed the conviction, holding that the evidence was sufficient to allow a rational jury to find that appellant knowingly possessed cocaine. *Id.* at 430. Particularly significant to the Court of Criminal Appeals was testimony that no cocaine was beneath the seat of the car prior to Williams' being placed in the car and the fact Williams initially gave a false name. *Id.* at 429. In addition, the Court noted Williams's "fidgeting." *Id.*

Here, the circumstances surrounding Shell's arrest are almost identical to those in *Williams*. The only distinction is that, here, the arresting officer did not notice any "furtive gesture." In this case, however, the only officer present was the officer driving the vehicle. Although Buttram testified that he noticed no "furtive gesture," unlike the officer in *Williams*, who had been sitting in the back seat with appellant, Buttram had been attempting to watch Shell from the front seat while driving the vehicle. Based on the similar evidence presented here, a rational jury could have

8

determined beyond a reasonable doubt that Shell was in possession of MDMA on the night in question. *See id.*; *see also Thompson v. State*, No. 03-05-00443-CR, 2006 Tex. App. LEXIS 9325 (Tex. App.—Austin Oct. 27, 2006, no pet.) (mem. op., not designated for publication) (evidence sufficient to allow rational fact-finder to find possession beyond a reasonable doubt where officers performed the required routine inspection of back seat before appellant entered car and found cocaine in car after appellant exited car). The district court did not abuse its discretion by allowing the jury to consider the evidence. Accordingly, we overrule Shell's second point of error.

Having overruled Shell's points of error, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed:  May 15, 2009

Do Not Publish