

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-18-00199-CR
No. 07-18-00200-CR
No. 07-18-00201-CR

---

DOUGLAS STAPP, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2018-414,603; Honorable William R. Eichman II, Presiding

---

November 25, 2019

## MEMORANDUM OPINION

Before QUINN, C.J. and PIRTLE and PARKER, JJ.

Appellant, Douglas Stapp, appeals from his convictions by jury of one count of aggravated sexual assault of a child[1] and two counts of indecency with a child by contact[2] and the resulting concurrent sentences of life imprisonment for the aggravated

---

[1] TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West 2019).

[2] TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2019).

sexual assault offense and twenty years for each offense of indecency with a child. Appellant challenges his convictions through two issues. We will affirm.

## BACKGROUND

Appellant was charged via indictment with the offense of continuous sexual abuse of a child.[3] The indictment specified several acts of sexual abuse of a child including allegations that Appellant: (1) intentionally or knowingly caused the sexual organ of Y.M., a child younger than fourteen years of age, to contact Appellant's mouth; (2) with the intent to arouse or gratify the sexual desire of Appellant, intentionally or knowingly engaged in sexual contact with Y.M., a child younger than seventeen years of age and not Appellant's spouse, by causing Y.M. to touch Appellant's sexual organ; (3) with the intent to arouse or gratify the sexual desire of Appellant, intentionally or knowingly engaged in sexual contact with Y.M., a child younger than seventeen years and not Appellant's spouse, by causing Y.M. to touch Appellant's sexual organ; and (4) intentionally or knowingly caused the sexual organ of Y.M., a child younger than fourteen years of age, to contact Appellant's sexual organ.

Y.M. is the child victim in this case. She was five years old at the time of the incidents with Appellant and nine when she testified at trial. Y.M.'s mother testified she began dating Appellant in May 2013. In September 2013, Y.M. and her mother moved in with Appellant. Appellant stopped working a couple of months later and cared for Y.M. after school.

---

[3] TEX. PENAL CODE ANN. § 21.02(b) (West 2019).

2

Y.M. and her mother moved out of Appellant's home in July 2014. Y.M.'s mother noticed Y.M. was "acting funny" and asked Y.M. if "someone had touched her." After being initially reluctant, Y.M. told her mother Appellant had "touched her . . . [i]n her private." Y.M. told her mother it happened "three times." Y.M.'s mother testified she did not ask any further questions and contacted the police. A week later, Y.M. was interviewed at the Children's Advocacy Center of the South Plains by John Wuerflein, a forensic interviewer.

At trial, Y.M. testified Appellant stayed with her while her mother worked. She told the jury of several incidents that occurred with Appellant, beginning when she was about five years old. She told the jury that while she lay on the couch, Appellant watched videos with a "boy and a girl being naked" on his computer. She said Appellant "would take his middle part and this white stuff camed [sic] out." During cross-examination, she said Appellant "sometimes" made her watch those videos.

Y.M. also told the jury of several instances in which Appellant inappropriately touched her. She testified that once, when she was sleeping, Appellant "pulled my shorts down and he put his middle part close to my middle part." She also described an instance in which she was asleep on the couch. Appellant pulled her panties down and "licked [her] middle part." She told the jury Appellant told her, "Don't tell your mom, or I'll kill you." She also told the jury Appellant would "massage" her "middle part" and Appellant's "middle part" with a "round thing" that "massages" and "vibrates."

Y.M. also testified Appellant touched her "middle part" when she had her clothes on and rubbed her bottom after he pulled her pants and panties down. Y.M. told the

3

jury that on one occasion, Appellant forced her to put coconut lotion on his "middle part," causing Appellant to "squirt."

Wuerflein testified at trial that during his forensic interview with Y.M., she described several acts of sexual assault by Appellant. She told Wuerflein Appellant touched her "coochie," referring to her female sexual organ, with Appellant's mouth. She said Appellant "would lick her coochie." She told Wuerflein Appellant touched her "on the inside of her bottom" and said Appellant "would have her rub his bottom." She also described Appellant as watching "bad stuff on the computer" and that he would "put lotion on his thingy." She used a motion to show how he would have her hand move on his "thingy" until he "squirted." According to Y.M.'s testimony, these incidents happened more than once.

**ANALYSIS**

**ISSUE ONE—OUTCRY TESTIMONY**

By his first issue, Appellant argues the trial court erred in permitting two outcry witnesses—mom as to two of underlying offenses and forensic interviewer as to three other offenses. He further argues the trial court should not have permitted the second outcry witness to testify to unindicted acts. By the trial court's allowing such testimony, Appellant contends, he was harmed. The State responds that the trial court properly designated the outcry witnesses and Appellant failed to preserve his complaint as to the scope of their testimony.

Article 38.072 of the Texas Code of Criminal Procedure creates a statutory exception to the general rule excluding hearsay testimony. *See* TEX. CODE CRIM. PROC.

4

ANN. art. 38.072 (West 2018). The statute applies to statements made by the child against whom the offense was allegedly committed and to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. *See id.* at § 2(a). "[O]utcry testimony admitted in compliance with article 38.072 is . . . admissible for the truth of the matter asserted in the testimony." *Duran v. State,* 163 S.W.3d 253, 257 (Tex. App.—Fort Worth 2005, no pet.) (citations omitted); *Sosa v. State*, No. 01-14-00157-CR, 2015 Tex. App. LEXIS 6504, at *10 (Tex. App.—Houston [1st Dist.] June 25, 2015, no pet.) (mem. op., not designated for publication) (citation omitted).

Outcry witness testimony is event-specific, not person-specific. *Canfield v. State,* No. 07-13-00161-CR, 2015 Tex. App. LEXIS 1694, at *9 (Tex. App.—Amarillo Feb. 19, 2015, no pet.) (mem. op., not designated for publication) (citation omitted). "That is, where more than one offense is being prosecuted, there may be more than one outcry statement and more than one outcry witness." *Id.* (citing *Robinett v. State*, 383 S.W.3d 758, 761-62 (Tex. App.—Amarillo 2012, no pet.)). In those situations, "each outcry statement must meet the requirements of article 38.072, and because designation of the proper outcry witness is event-specific, the outcry statements related by different witnesses must concern different events and not simply be the repetition of the same event told by the victim at different times to different individuals." *Id.* (citations omitted).

We review the admission of outcry testimony under an abuse of discretion standard. *Robinett,* 383 S.W.3d at 761 (citing *Garcia v. State,* 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Martinez v. State,* 178 S.W.3d 806, 810 (Tex. Crim. App. 2005)). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.*

5

(citations omitted). To satisfy the requirements of the outcry witness statute, the statement must describe the alleged offense in some discernible way and amount to "more than words which give a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91. *See also Lopez v. State,* 343 S.W.3d 137, 140 (Tex. Crim. App. 2011).

A violation of article 38.072 is non-constitutional error subject to harmless error analysis. *Sosa,* 2015 Tex. App. LEXIS 6504, at *11-12 (citing TEX. R. APP. P. 44.2(b); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). In that regard, pursuant to Texas Rule of Appellate Procedure 44.2(b), "non-constitutional error must be disregarded unless it affected the defendant's substantial rights, i.e., the error had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citing TEX. R. APP. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011)). Accordingly, we will not overturn a criminal conviction for non-constitutional error if "we, after examining the record as a whole, have fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Id.* (citing *Barshaw,* 342 S.W.3d at 93).

In evaluating the likelihood that the jury's decision was affected by the error, we consider "everything in the record, including factors such as the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, whether the State emphasized the error, and whether overwhelming evidence of guilt was present." *Sosa*, 2015 Tex. App. LEXIS 6504, at *11-12 (citing *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003)). Any such error is also harmless if the same or similar evidence is admitted

6

without objection at another point in the trial. *Id.* (citing *Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding error in designation of outcry witness under article 38.072 was harmless because similar testimony was admitted through child complainant and the mother); *Duncan v. State,* 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding improper admission of outcry testimony was harmless because similar testimony was admitted through complainant, pediatrician, and medical records).

In this case, Y.M.'s mother testified that Y.M. told her Appellant had "touched her . . . [i]n her private" and said it happened "three times." Y.M.'s mother testified she did not ask any further questions and contacted the police. This is very similar to what occurred in *Sims v. State,* 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd). There, the mother testified the complainant told her the defendant "had touched her private parts." *Id.* The record did not show that the child "described any specific details of the alleged abuse." *Id.* The mother said she did not question the child about the allegation but later relayed the statement to another person. When that person spoke with the child, the child provided to her very specific details about the offense. *Id.* There, the appellate court found the trial court could have reasonably determined that the complainant's statements to her mother were nothing more than a general allusion to something in the nature of sexual abuse having occurred and not a clear description of the offense charged. The court of appeals went on to decide that the trial court did not, therefore, abuse its discretion in finding the forensic interviewer to be the proper outcry witness.

Several other courts have found similar statements to be insufficient to satisfy the requirements of article 38.072. *See, e.g., Reyes v. State,* 274 S.W.3d 724, 727-29 (Tex. App.—San Antonio 2008, pet. ref'd) (citation omitted) (finding victim's statement to a CPS caseworker was not detailed enough to satisfy the statute); *Hanson v. State,* 180 S.W.3d 726, 730 (Tex. App.—Waco 2005, no pet.) (finding parents and others to whom the child victim made statements were not proper outcry witnesses because the child said only that the defendant had touched his "private parts" and did not provide any additional details); *Solis v. State*, No. 02-12-00529-CR, 2014 Tex. App. LEXIS 4493, at *10 (Tex. App.—Fort Worth Apr. 24, 2014, no pet.) (mem. op., not designated for publication) (citations omitted) (finding complainant's statement to her mother that the defendant had "'raped' and 'molested' her, as well as her statement that he touched her 'private areas'" failed to describe the offense of indecency or aggravated assault as indicted and thus, the mother was not the proper outcry witness for those offenses); *Herrera v. State,* No. 10-05-00026-CR, 2005 Tex. App. LEXIS 9092, at *3-4 (Tex. App.—Waco Nov. 2, 2005, no pet.) (mem. op., not designated for publication) (citations omitted) (finding trial court did not abuse its discretion when it found the mother was not the proper outcry witness because the child told her only that the defendant "touched her" and did not tell her mother "any details about the 'how, when, and where'" of the assault).

In contrast, in this case, Wuerflein testified that during his interview of Y.M., she described several acts of sexual assault by Appellant. She told Wuerflein Appellant touched her "coochie," referring to her female sexual organ, with Appellant's mouth. Y.M. also said Appellant "would lick her coochie" and he touched her "on the inside of

8

her bottom." Y.M. also told Wuerflein Appellant "would have her rub his bottom." She also described Appellant as watching "bad stuff on the computer" and that he would "put lotion on his thingy." She used a motion to show how he would have her hand move on his "thingy" until he "squirted" and she said the incidents happened more than once.

The trial court could have reasonably concluded Y.M.'s statement to her mother failed to "describe any specific details" of the other alleged offenses and instead found that Wuerflein was the proper outcry witness as to the described underlying offenses. Accordingly, we find the trial court did not abuse its discretion in determining the proper outcry witnesses.

As part of Appellant's complaint concerning the outcry witnesses, he contends Wuerflein's testimony harmed him because Wuerflein was permitted to testify about incidents that were not included in the indictment. The State argues Appellant failed to preserve this issue for our review because he did not raise it with the trial court. We agree. To preserve error, an Appellant must have raised the complaints asserted on appeal in the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a); *Neal v. State,* 150 S.W.3d 169, 175 (Tex. Crim. App. 2004). Appellant failed to do so here and thus, presents nothing for our review on this point.

Even if the trial court erred in determining the proper outcry witness, or it erred in deciding the scope of the outcry witness's testimony, any such error would have been harmless because the same or similar evidence was properly admitted without objection at another point in the trial. Accordingly, we overrule Appellant's first issue.

9

**ISSUE TWO—DOUBLE JEOPARDY**

By his second issue, Appellant opposes the "twin judgments" for the offenses of aggravated sexual assault and indecency with a child, arguing the same facts support the elements of each offense. Appellant was found guilty of aggravated sexual assault of a child by causing his sexual organ to touch the complainant's sexual organ and also found guilty of indecency with a child by contacting her sexual organ, with both offenses allegedly occurring on or about the period between May 1, 2013 and October 1, 2014. While both offenses are lesser-included offenses of the charged offense of continuous sexual abuse of a child, Appellant asserts, indecency with a child by contact is also a lesser-included offense of sexual assault of a child. Accordingly, Appellant argues he is being subjected to multiple punishments for the same conduct. The State disagrees, arguing the instances of contact were separate and distinct from the instance comprising the offense of aggravated sexual assault and therefore, Appellant has not received multiple punishments for the same conduct in violation of the Double Jeopardy Clause. We agree with the State's position.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, protects an accused from being punished more than once for the same criminal conduct based on a single continuous act. *See* U.S. CONST. amends V, XIV. *See also Maldonado v. State,* 461 S.W.3d 144, 148-50 (Tex. Crim. App. 2015) (discussing application of the "subsumption theory" from *Patterson v. State,* 152 S.W.3d 88 (Tex. Crim. App. 2004)). An offense may be "subsumed" by another offense when there is a single act that cannot physically occur in the absence of another act. For instance, the offense of sexual assault by penetration can subsume

10

the offense of indecency by contact because it is physically impossible to cause penetration without contact. The "subsumption theory" does not, however, apply in situations where a jury could reasonably find separate acts based on the facts of that particular case. *Maldonado,* 461 S.W.3d at 149. Thus, subsumption does not apply in this case because there are many separate acts of contact alleged**.**

As was true in *Maldonado,* the contact offenses here are not factually subsumed because there was evidence that separate and distinct indecency by contact offenses occurred at other times, entirely separate from the contact associated with the acts comprising the aggravated sexual assault offense. The jury heard testimony that, on occasions not involving Appellant's sexual organ touching Y.M.'s sexual organ, Appellant touched Y.M.'s female sexual organ both outside and inside her clothing and that he "licked" Y.M.'s "middle part." Each of these are distinct instances of indecent contact that happened at times separate and apart from one another and from the instance in which Appellant's sexual organ contacted Y.M.'s sexual organ. *See Vick v. State,* 991 S.W.2d 830, 833-34 (Tex. Crim. App. 1999) (finding the defendant's conduct "constituted a separate and distinct statutory offense" from the other indicted offense, even when both were violations of a single statute). Thus, subsumption is inapplicable here. As the court explained in *Maldonado,* "because the focus of sex offenses is the prohibited conduct and the legislature intended to allow separate punishments for each prohibited act, the multiple convictions do not violate the Double Jeopardy Clause." *See Loving v. State,* 401 S.W.3d 642, 648-49 (Tex. Crim. App. 2013) (discussing double jeopardy in child sexual abuse context). Accordingly, we overrule Appellant's second issue.

**CONCLUSION**

Having resolved each of Appellant's issues against him, we affirm the judgments of the trial court.

Patrick A. Pirtle
Justice

Do not publish.