

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-24-00354-CR

CHRISTOPHER LEE HEAD, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 274th District Court
Hays County, Texas[1]
Trial Court No. CR-20-0953-C, Honorable Glenn H. Devlin, Presiding

March 9, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Christopher Lee Head, appeals from his conviction for continuous sexual abuse of a child.[2]  The trial court judge sentenced him to life in the Institutional Division of the Texas Department of Criminal Justice.  In two issues, Appellant argues his conviction should be reversed because the court abused its discretion by designating the

---

[1] This cause was originally filed in the Third Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas.  See TEX. GOV'T CODE ANN. § 73.001.  In the event of any conflict, we apply the transferor court's case law.  TEX. R. APP. P. 41.3.

[2] TEX. PENAL CODE § 21.02.

wrong outcry witness and by admitting extraneous offense evidence that he physically abused his wife. We affirm.

## BACKGROUND

When "M.Q." was about 3 years old, her mother, Jordan Castillo, began living with Appellant. During the years relevant to this case, M.Q. considered Appellant her stepfather.[3] When M.Q. was about five or six, Appellant began sexually abusing her. The abuse continued regularly until she was nine years old and made an outcry.

The abuse began with Appellant pulling his pants down and putting M.Q.'s hand on his genitals. It progressed to what Appellant called a "tasting game." He would blindfold M.Q. and place objects in her mouth, asking her to identify them. She said he used a straw, a CD or DVD, then his genitals. They also played hide and seek in the dark. Although several children participated, Appellant would follow M.Q. to where she hid or direct her to the bathroom. Each time they played hide and seek, Appellant placed his genitals in her mouth. When M.Q. tried to call out to another child for help, Appellant put his hand over her mouth and told her to be quiet.

Appellant frequently showed M.Q. pornography on her iPad or his phone, telling her to copy what she saw. On at least one occasion, he showed her a video of Jordan performing oral sex on him and instructed M.Q. to do the same. The abuse took various forms across multiple incidents, including Appellant touching M.Q.'s genitals, making her touch his, oral contact, and rubbing his unclothed genitals against hers. M.Q. also

---

[3] Appellant and Jordan married when M.Q. was about eight.

described Appellant ejaculating during these incidents. Appellant told M.Q. not to tell anyone, specifically not Jordan.

In or about August 2018, Jordan found pornography on M.Q.'s iPad. When she confronted M.Q., the girl replied that Appellant had been showing it to her and touching her body. Jordan ejected Appellant from the home and contacted law enforcement. M.Q. was initially reluctant to provide details. She told Jordan about some touching but did not describe the full extent of the abuse.

Bethany Bishop, a forensic interviewer with Roxanne's House, conducted a forensic interview in August 2018. M.Q. described touching over her clothing in Lockhart and San Marcos but did not disclose the games, the oral contact, and an incident in Florida.

In November 2018, Appellant told his best friend, Christopher Martinez, known as "Uncle Mikey," what he had done to M.Q. Uncle Mikey's wife, Meagan Grant, also learned of the confession. In December, they invited M.Q. to their home. With Grant and their daughter present, Uncle Mikey told M.Q. it was acceptable to talk about the abuse and shared that he had been victimized as a child himself. M.Q. opened up about what happened. Grant recalled M.Q. describing the blindfold game, the hide-and-seek game, grinding, and evidence about where the abuse occurred. Uncle Mikey and Grant then took M.Q. to speak with Jordan.

M.Q. made a full outcry to her mother. She described the blindfold game, the hide-and-seek game and what occurred in the bathroom, touching under and over her clothing, ejaculation, and that the abuse had occurred almost daily for about two years.

3

A second forensic interview was conducted by Bishop in December 2018. In that interview, M.Q. provided substantially more detail than before, including the incident in Florida which M.Q. had not previously disclosed to anyone.

Appellant was indicted on February 12, 2020. The case went to trial on September 30, 2024. After the jury was impaneled but before opening statements, an outcry hearing was held outside the jury's presence. The State had originally intended to offer Uncle Mikey as an outcry witness for the December 2018 disclosures. When the assistant district attorney met with Uncle Mikey, however, he said he could not remember any details of what M.Q. told him or even recall being present for the December meeting. The State then offered Jordan as the outcry witness for most of the offenses and Bishop for the Florida incident alone.

Appellant argued Uncle Mikey was the proper outcry witness and that his unwillingness to participate in the investigation made the statements unreliable. At the hearing, Uncle Mikey testified that he could not recall when the conversation with M.Q. took place. Asked to recount what M.Q. told him, he said he could only recall there was "foul play and manipulation." He repeatedly struggled to separate what M.Q. told him from what Appellant had confessed to him. He acknowledged his mind was "so cloudy" he could not verbally express his thoughts. When the prosecutor asked whether he could tell the court exactly what M.Q. said, he responded with fragmented references to hide and seek and "groping" but could not provide coherent detail.

After hearing testimony from the witnesses and arguments from both parties, the trial court ruled that Jordan was the proper outcry witness and that Bishop could testify

4

as the outcry witness for the Florida incident. Following a three-day trial, the jury found Appellant guilty and the trial court sentenced him to life in prison.

## ANALYSIS

Outcry Witness

In his first issue, Appellant argues the trial court abused its discretion by designating the incorrect outcry witness. We disagree.

We review evidentiary rulings under an abuse of discretion standard. A trial court's findings will be upheld when supported by the evidence and within the zone of reasonable disagreement. *Maybin v. State*, No. 03-22-00414-CR, 2023 Tex. App. LEXIS 6505, at \*7 (Tex. App.—Austin Aug. 24, 2023, no pet.). A trial court has broad discretion in determining the admissibility of outcry evidence. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990).

Hearsay is generally not admissible to prove the truth of the matter asserted. TEX. R. EVID. 801. The Legislature, however, created an exception in article 38.072 of the Texas Code of Criminal Procedure for certain offenses against children. That provision allows the first person to whom the child disclosed the abuse to testify about what the child said. *Stapp v. State*, No. 07-18-00199-CR, 2019 Tex App. LEXIS 10240, at \*5 (Tex. App.—Amarillo Nov. 25, 2019). As the Court of Criminal Appeals has observed, the societal interest in curbing child abuse would hardly be served if all the first person had to testify to was a general allegation that something in the area of child abuse was going on at home. *Garcia*, 792 S.W.2d at 91.

5

Accordingly, courts have held a proper outcry witness is the first adult to whom the child makes a statement who can remember and relate in some discernible manner the how, when, and where of the abuse. *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd); *Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd). Outcry witness testimony is event-specific, not person-specific. *Stapp*, 2019 Tex App. LEXIS 10240, at *5. Where a child has been the victim of more than one act of sexual abuse, multiple outcry witnesses may testify about separate acts committed by the defendant. *Mendez v. State*, No. 03-19-00546-CR, 2021 Tex. App. LEXIS 2326, at *11 (Tex. App.—Austin Mar. 26, 2021, no pet.).

The record supports the trial court's determination. Although Uncle Mikey may have been the first person M.Q. told about some of Appellant's acts, the trial court found he could not remember and relate M.Q.'s statements in a discernible manner. His testimony at the hearing confirmed that finding. Asked what M.Q. told him, Uncle Mikey could recall only that there was "foul play and manipulation." He acknowledged his mind was "so cloudy" he could not verbally express his thoughts. When the prosecutor pressed him for the words M.Q. used, he offered fragmented responses, at one point stating he did not know "how to explain it." He repeatedly conflated what Appellant confessed to him with what M.Q. disclosed. He could not recall when the conversation occurred, could not say with certainty who was present, and could not recall the December meeting in which M.Q. spoke with Jordan.

By contrast, Jordan testified in detail about what M.Q. told her during the December outcry: the blindfold game, the hide-and-seek game and what occurred in the bathroom, touching under and over clothing, ejaculation, and the locations and

6

approximate duration of the abuse. Bishop testified about the details M.Q. disclosed during the December forensic interview that M.Q. had not described to anyone else, including the Florida incident.

The trial court therefore found Jordan was the first person who could remember and relate M.Q.'s statements in a discernible manner as to most of the offenses. Because the Florida incident was disclosed not to Jordan but to Bishop during the forensic interview, the trial court found Bishop was the first person who could remember and relate those statements. The court expressly confined Bishop's outcry testimony to the Florida incident.

The trial court did not abuse its discretion. We overrule Appellant's first issue.

Extraneous Offense

In his second issue, Appellant argues the trial court abused its discretion by admitting extraneous offense evidence that Appellant physically abused Jordan. We hold that Appellant failed to preserve this issue at trial. *See* TEX. R. APP. P. 33.1(a)(1).

On one occasion, Appellant objected to M.Q. testifying about the physical abuse of Jordan, but the trial court overruled the objection. Jordan later testified about the abuse without objection. Text messages from Appellant to Jordan apologizing for slapping her were also admitted without objection. Uncle Mikey and Grant testified without objection that M.Q. was scared to make an outcry because of what Appellant would do to Jordan. Because Appellant did not continue objecting, request a running objection, or seek a hearing outside the jury's presence, any error was not preserved. *See, e.g., Ethington v.*

*State,* 819 S.W.2d 854, 859–60 (Tex. Crim. App. 1991); *Sanchez v. State,* 595 S.W.3d 331, 337–38 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

We overrule Appellant's second issue.

## CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment.

Lawrence M. Doss
Justice

Do not publish.