

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00355-CR

**CHARLES BRADSHAW,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2019-1678-C1

# O P I N I O N

Appellant, Charles Bradshaw, was found guilty of the offense of aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021. The jury assessed punishment at twenty-five years in prison.

In three issues, Bradshaw argues that: (1) the evidence is insufficient to support his conviction; (2) the trial court abused its discretion in designating the proper outcry witness under article 38.072 of the Texas Code of Criminal Procedure, *see* TEX. CODE CRIM.

PROC. ANN. art. 38.072; and (3) the "state consolidated court cost" reflected in the bill of costs should be reduced from $185 to $133. We affirm.

**Who is the Proper Outcry Witness?**

In his second issue, Bradshaw contends that the trial court abused its discretion in designating the forensic interviewer, Dr. Kerry Burkley, as the proper outcry witness, rather than the child victim's mother. Specifically, Bradshaw asserts that the child victim's mother was the proper outcry witness because she was the first person to whom the child made a statement describing sexual abuse.

STANDARD OF REVIEW & APPLICABLE LAW

Article 38.072 of the Texas Code of Criminal Procedure, the outcry statute, governs the admissibility of certain hearsay evidence in trial for specified crimes against a child younger than fourteen years old. *Id.* The statute creates a hearsay exception and allows testimony of the first adult in whom the child confides regarding sexual or physical abuse. *See id.* art. 38.072, § 2(a)(3); *see also Martinez v. State*, 178 S.W.3d 806, 810-11 (Tex. Crim. App. 2005). The child's statement to the adult is known as the "outcry," and the adult who testifies about the child's outcry is known as the "outcry witness." *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). The Court of Criminal Appeals has explained that under article 38.072, the proper outcry witness is the first adult person to whom the child describes the alleged offense in some discernible manner beyond general insinuations that sexual abuse occurred. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim.

App. 2011); *see Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) ("[T]he statement must be more than words [that] give the general allusion that something in the area of child abuse was going on."); *see also Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd) ("Simply put, the outcry witness is the first adult to whom the child tells 'how, when, and where' of the assault."). However, the proper outcry witness is not determined merely by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense. *See Thomas v. State*, 1 S.W.3d 138, 141 (Tex. App.—Texarkana 1999, pet. ref'd). Rather, the victim must describe the offense to the witness. *Garcia*, 792 S.W.2d at 91.

The trial court has "broad discretion" in determining the admissibility of outcry evidence. *Id.* at 92. We review a trial court's ruling on the designation of an outcry witness for an abuse of discretion. *Id.* A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). We will not reverse a trial court's ruling if it was within the zone of reasonable disagreement, and we must uphold the ruling "if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

DISCUSSION

At the article 38.072 hearing, the child's mother testified that she came home from work to discover the child victim, who was five years old at the time, naked in the same room with her older brother, Bradshaw, who was eighteen years old at the time of the incident. The child victim was scared and would not let her mother touch her. The child's mother tried to wake Bradshaw, but "he never would wake up." The child's mother put clothes on the child victim and drove to the house of the mother's niece. At the niece's house, the child's mother asked the child victim if Bradshaw did anything to her. The child victim pointed to her mouth but did not say anything. The child's mother called the police because she believed that the child victim pointing to her mouth described oral sex between Bradshaw and the child victim.

The child was later interviewed by Dr. Burkley, the Associate Director for the Children's Advocacy Center. The child victim told Dr. Burkley that she was on her knees with her clothes on while Bradshaw stood in front of her without clothes and put his penis in her mouth. Later in the interview, the child victim demonstrated the positioning and mentioned that this only happened one time while in Bradshaw's room. The child victim also acknowledged that Bradshaw's penis touched her buttocks and her vagina.

We do not find that the child's mother's testimony provided anything beyond a general insinuation that a sexual offense has occurred. *See Lopez*, 343 S.W.3d at 140; *Deggs v. State*, 646 S.W.3d 916, 928 (Tex. App.—Waco 2022, pet. ref'd) (concluding that a police

officer who took the child victim's statement that Deggs "had touched her breasts under her bikini top and on the outside of her vagina under her bikini bottoms" was the proper outcry witness because there was a discernible description of a sexual offense that had occurred, whereas a text message from the child victim to her mother that "Can you come get me. Dillon's cuz [Deggs] put his hand in my pants. He just went outside" did not contain anything beyond a general insinuation that a sexual offense had occurred). The trial court was well within its discretion to determine that it was not until the child victim told Dr. Burkley about the incident of oral sex in Bradshaw's room that there was a discernible description of a sexual offense that had occurred. *See Lopez*, 343 S.W.3d at 140; *see also Deggs*, 646 S.W.3d at 928; *Reyes*, 274 S.W.3d at 727 (noting that the outcry witness is the first adult to whom the child tells how, when, and where the sexual assault occurred). Because of this, we conclude that the trial court did not abuse its discretion by finding that Dr. Burkley, not the child's mother, was the proper individual to testify as the outcry witness. We overrule Bradshaw's second issue.

## Sufficiency of the Evidence

In his first issue, Bradshaw argues that the evidence is insufficient to support his conviction for aggravated sexual assault of a child. We disagree.

STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the

> offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

DISCUSSION

The elements of aggravated sexual assault of a child are found in section 22.021 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 22.021. As relevant to this case, a person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the mouth of a child by the sexual organ of the actor and the victim is younger than fourteen years of age. *See id.* § 22.021(a)(1)(B)(ii), (a)(2)(B). Bradshaw does not contest that the child victim was younger than fourteen years of age on the date of the incident.

The child victim, who was eight years old at the time of trial, had trouble remembering the incident. Bradshaw characterizes the child victim's failure to remember the incident as a recantation. The record does not support Bradshaw's characterization of the child victim's testimony as a recantation.

The child victim testified that Bradshaw made her go in his room one time and that she did not like it. When asked what happened in Bradshaw's room, the child victim stated that she did not know and could not remember. The child victim recalled speaking to Dr. Burkley but could not remember telling Dr. Burkley that something happened with Bradshaw. Later, the State asked the child victim if she remembered telling Dr. Burkley that some part of Bradshaw touched her, and the child victim responded, "I think. I don't

know." Although she could not remember the details of her conversation with Dr. Burkley, the child victim stated that she told Dr. Burkley the truth about what happened. The child victim also insisted that: (1) she would not make up something to get Bradshaw in trouble; (2) she did not want to see Bradshaw in trouble; and (3) her mother did not coach her. On cross-examination, the child victim recalled Bradshaw lying on his bed sleeping on the day in question. At no point did the child victim deny that the incident of sexual abuse occurred.

In addition to the child victim's testimony, the State presented other corroborating testimony. Specifically, the child's mother described that she came home from work to see the child victim naked in Bradshaw's bedroom while Bradshaw was in bed sleeping. The child victim pointed to her mouth when the child's mother asked if Bradshaw had done anything to her. In addition, the child victim told Dr. Burkley during a forensic interview that Bradshaw stood naked in front of her while she was on her knees and made her engage in oral sex. Psychologist Dr. William Carter explained that the child victim's reticence about saying more about the incident may have been attributable to embarrassment or concern about her mother's "melodramatic breakdown" and "histrionic" reaction to the incident. Dr. Carter also noted that the child victim appeared to struggle with vocally describing the incident but was able to demonstrate to both her mother and Dr. Burkley what had happened.

Ordinarily, the child victim's testimony alone is sufficient to support a conviction for aggravated sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *see also Revels v. State*, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.). A child victim's outcry statement alone can also sustain a conviction for a sexual offense. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); *Cervantes v. State*, 594 S.W.3d 667, 673 (Tex. App.—Waco 2019, no pet.); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). There is no requirement that the victim's testimony be corroborated by medical or physical evidence. *Cantu v. State*, 366 S.W.3d 771, 776 (Tex. App.—Amarillo 2012, no pet.). Further, inconsistencies or conflicts in the child's testimony do not automatically render the child incompetent to testify but, instead, affects the weight to be given to the child's testimony. *See, e.g., Minnis v. State*, No. 02-20-00027-CR, 2021 Tex. App. LEXIS 109, at *9 (Tex. App.—Fort Worth Jan. 7, 2021, no pet.) (mem. op., not designated for publication) (internal quotation & citation omitted). Likewise, inability "to recall certain facts does not necessarily render the child incompetent." *Robinson v. State*, 368 S.W.3d 588, 604 (Tex. App.—Austin 2012, pet. ref'd).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have concluded that Bradshaw committed the offense of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021; *see also Zuniga*, 551 S.W.3d at 732-33. As such, we conclude that Bradshaw's conviction is supported by

sufficient evidence. *See* TEX. PENAL CODE ANN. § 22.021; *see also Zuniga*, 551 S.W.3d at 732-33. We overrule Bradshaw's first issue.

## Court Costs

In his third issue, Bradshaw complains that the bill of costs should be modified to reduce the state consolidated court costs on conviction of a felony from $185 to $133 because the offense in this case was committed prior to January 1, 2020. The State agrees that this fee should be reduced. We disagree.

In 2019, the Legislature overhauled the system of court costs for criminal cases. *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, 2019 Tex. Gen. Laws 3982 (the "Cost Act"). Among other things, the Cost Act raised the amount of certain costs, consolidated others, repealed some costs altogether, and recategorized certain costs as fines. *See, e.g., Contreras v. State*, Nos. 05-20-00185-CR & 05-20-00186-CR, 2021 Tex. App. LEXIS 10137, at *16 (Tex. App.—Dallas Dec. 23, 2021, no pet.) (mem. op. on reh'g, not designated for publication). Relevant here, the Cost Act increased the amount of state consolidated court costs on a felony conviction from $133 to $185. *See* TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1) (providing that a person convicted of a felony shall pay as a court cost $185); *see also* Act of June 16, 2003, 78th Leg., R.S., ch. 209, § 62(a), 2003 Tex. Gen. Laws 979, 996 (former TEX. LOC. GOV'T CODE ANN. § 133.102) (providing that a person convicted of a felony shall pay as a court cost $133).

The Cost Act took effect on January 1, 2020.  *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 5.04, 2019 Tex. Gen. Laws 3982, 4036.  With respect to its effective date, the Cost Act provides:

> SECTION 5.01.  Except as otherwise provided by this Act, the changes in law made by this Act apply only to a cost, fee, or fine on conviction for an offense committed on or after the effective date of this Act.  *An offense committed before the effective date of this Act is governed by the law in effect on the date the offense was committed, and the former law is continued in effect for that purpose.*  For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

*Id.* § 5.01, 2019 Tex. Gen. Laws 3982, 4035-36 (emphasis added).

Here, the judgment of conviction indicates that Bradshaw committed the charged offense on July 8, 2019.  Because the charged offense in this case was committed before the January 1, 2020 effective date of the Cost Act, we apply the law in effect on the date the offense was committed.

The law governing court costs on the date the offense was committed included section 51.608 of the Texas Government Code, which provides the following:

> Notwithstanding any other law that establishes the amount of a court cost collected by the clerk of a district, county, or statutory county court from a defendant in a criminal proceeding based on the law in effect on the date the offense was committed, the amount of a court cost imposed on the defendant in a criminal proceeding must be the amount established under law in effect on the date the defendant is convicted of the offense.

TEX. GOV'T CODE ANN. § 51.608 (effective June 14, 2013).  Section 51.608 unambiguously states that the amount of court costs must be based on the law "in effect" on the *date of*

*conviction.  See id.*; *Clark v. State*, 994 S.W.2d 166, 168 (Tex. Crim. App. 1999) (noting that when the language of a statute is unambiguous, we give effect to the plain meaning of the words unless doing so would lead to absurd results); *see also Contreras*, 2021 Tex. App. LEXIS 10137, at *18.

The trial court signed the judgment of conviction on October 20, 2022.  Although section 5.01 of the Cost Act requires us to apply the law regarding court costs in effect on the date the offense was committed, section 51.608 of the Texas Government Code requires us to impose the amount of such costs established under the law in effect at the time of conviction, which, in this case, is the amount established under the version of section 133.102 of the Local Government Code after it was amended by the Cost Act.  *See* TEX. GOV'T CODE ANN. § 51.608; *see also* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 5.04, 2019 Tex. Gen. Laws 3982, 4035-36.  In other words, the application of section 51.608 of the Texas Government Code to these facts yields the same result as if the Cost Act applied.

Under the current version of section 133.102 of the Texas Local Government Code, the amount of state consolidated court costs owed is $185.[1]  *See* TEX. LOC. GOV'T CODE

---

[1] We note that section 133.102(d) of the Texas Local Government Code addresses the allocation of court costs, stating that, among other things, "money collected as court costs imposed on offenses committed on or after January 1, 2004, but before January 1, 2020, shall be allocated according to the percentages provided in Subsection (e), as that subsection existed and was applied on December 31, 2019." TEX. LOC. GOV'T CODE ANN. § 133.102(d).  Subsection (e) directed the comptroller to allocate the state consolidated court costs to a variety of accounts and funds based on listed percentages.  *Id.* § 133.102(e). Chapter 133 of the Local Government Code does not provide any guidance regarding dates to be used to determine the amount of court costs that should be assessed.

ANN. § 133.102. Therefore, we conclude that the trial court properly assessed $185 in consolidated fees under the current version of section 133.102(a)(1) of the Texas Local Government Code.[2]  *See* TEX. GOV'T CODE ANN. § 51.608; TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1); *see also Hayes v. State*, No. 11-21-00251-CR, 2023 Tex. App. LEXIS 4186, at **31 (Tex. App.—Eastland June 15, 2023, no pet. h.) (mem. op., not designated for publication) (applying section 51.608 of the Texas Government Code to a challenge to the assessed state consolidated court costs and concluding that appellant was responsible for $185 in consolidated court costs because he was convicted on October 27, 2021, even though the offense occurred on December 27, 2019).  Accordingly, we overrule Bradshaw's third issue.

## Conclusion

We affirm the judgment of the trial court.

---

[2] We further mention that determining the amount of court costs in a particular case frequently is confusing, especially because court costs are addressed in several different codes, including the Texas Code of Criminal Procedure, the Texas Government Code, and the Texas Local Government Code.  We are not aware of a comprehensive treatment of court costs in a singular code, which could alleviate much of the confusion.  The confusion is also exacerbated by the Legislature's usage of the "date of the offense" and the "date of conviction" seemingly interchangeably.  *See Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 596 (Tex. 2001) ("[T]he Legislature is presumed to be aware of case law relevant to statutes it amends or enacts."); *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it."); *see also Dailing v. State*, 546 S.W.3d 438, 443 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("In interpreting statutes, we seek to effectuate the Legislature's collective intent, and we presume that the Legislature intended for the entire statutory scheme to be effective. . . .  We presume that the Legislature meant every word to serve a discrete purpose that should be given effect." (internal citations omitted)).  Because of the foregoing, as well as the meager guidance on court costs provided to district clerks and intermediate appellate courts, the value of the time and resources expended to ascertain the appropriate amount of court costs in a particular case often far exceeds the assessed amount of court costs we are tasked with evaluating.

STEVE SMITH
Justice

Before Chief Justice Gray,
      Justice Johnson,
      and Justice Smith
(Chief Justice Gray dissenting)
Affirmed
Opinion delivered and filed August 2, 2023
Publish
[CRPM]

