In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-25-00085-CR
NO. 09-25-00086-CR
NO. 09-25-00087-CR
NO. 09-25-00088-CR

_____

**KENNETH WAYNE SILVEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause Nos. F22-39790-0, F22-39791-0, F22-39792-0, and F22-39793-0**

**MEMORANDUM OPINION**

In these four cases, Appellant Kenneth Wayne Silvey appeals his two convictions for indecency with a child and two convictions for aggravated sexual assault of a child. *See* Texas Penal Code Ann. §§ 21.11, 22.021. The cases were consolidated for trial and heard by the same jury. The jury convicted Silvey on all four charges.

Silvey pleaded "true" to the enhancement paragraphs in each indictment. In trial cause numbers F22-39790-0 and F22-39791-0, the jury found that the indictments' accusations of two sequential felonies were true and assessed Silvey's sentence for indecency with a child at forty years of confinement in each case. In trial cause numbers F22-39792-0 and F22-39793-0, the jury found that the indictments' accusations of one prior sexual felony conviction were true and assessed Silvey's sentence for aggravated sexual assault of a child at life in prison in each case. The trial court ordered Silvey's sentences to run consecutively.

In each case, Silvey complains the evidence was insufficient to support his conviction and that the trial court abused its discretion by allowing the forensic interviewer to testify about inadmissible hearsay as an outcry witness. We issue this combined opinion affirming the judgments in trial cause numbers F22-39790-0, F22-39791-0, F22-39792-0, and F22-39793-0.

## BACKGROUND

In trial cause number F22-39790-0, the grand jury indicted Silvey for indecency with a child, alleging that on or about May 23, 2021, Silvey: "did then and there, with the intent to arouse or gratify the sexual desire of any person, engage

2

in sexual contact with [Sara],[1] by touching the breast of [Sara], a child younger than 17 years of age[.]" *See id.* § 21.11(a)(1), (c)(1).

In trial cause number F22-39791-0, the grand jury indicted Silvey for indecency with a child, alleging that on or about February 23, 2021, Silvey: "did then and there, with the intent to arouse or gratify the sexual desire of any person, engage in sexual contact with [Sara], by touching the breast of [Sara], a child younger than 17 years of age[.]" *See id.*

In trial cause number F22-39792-0, the grand jury indicted Silvey for aggravated sexual assault of a child, alleging that on or about May 23, 2021, Silvey: "did then and there intentionally or knowingly cause the sexual organ of the Defendant to contact the mouth of [Sara], a child who was then and there younger than 14 years of age[.]" *See id.* § 22.021(a)(1)(B)(ii), (2)(B).

In trial cause number F22-39793-0, the grand jury indicted Silvey for aggravated sexual assault of a child, alleging that on or about February 23, 2021, Silvey: "did then and there intentionally or knowingly cause the sexual organ of the Defendant to contact the mouth of [Sara], a child who was then and there younger

---

[1] We use pseudonyms for the name of the child and her family members to protect their rights to privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]").

than 14 years of age[.]" *See id.* All four indictments included three enhancement paragraphs alleging Silvey had prior felony convictions.

At the time of trial, Sara testified she was fifteen years old and that she was eleven years old in 2021. Sara testified that in 2021, she lived with Cindy and Silvey, her biological parents, and her brother David. Sara explained that in the summer of 2021, she was placed in foster care. Sara testified about her trauma involving Silvey, explaining that during the first incident in 2021, Silvey made her "suck his penis[.]" Sara explained the first incident occurred during the middle of the day in Silvey's bedroom at their home in Beaumont when nobody was at home. Sara testified that she was in her bedroom when Silvey grabbed her arm and "basically pulled me to the side and then forced me to do it." Sara testified that she was sitting on the end of the bed when Silvey held the back of her neck and "made me suck his penis[]" while he was standing up. Sara explained that Silvey made her put his penis in her mouth for about one minute, and she could not get away because he held her by the neck. Sara testified that Silvey stopped because he heard a door shut, and Silvey told her to hurry up and get in her room.

Sara explained that she feared Silvey, who told her not to tell Cindy, and she did not know what to do. Sara stated it took her "a little bit" to tell Cindy because she was scared, and she explained that she "wasn't the exact one to tell" Cindy. Sara testified that her friends told Cindy, and when Cindy did not believe Sara's friends,

Sara had to "step up and say something[.]" Sara explained that her friends explained to her what Silvey made her do, and it was a month after the first incident when she told Cindy about it. Sara testified that she told another adult when she ran away from home around June 2021.

Sara testified that a second incident occurred before she ran away in 2021. Sara stated it happened during the day in Silvey's bedroom at their home about a week after the first incident. Sara stated she was watching television when Silvey grabbed and pulled her and made her "suck his penis like the first time." Sara explained that Silvey made "me suck his penis that time and he touched my chest[.]" Sara testified that Silvey took off her shirt and she did not have a bra on when he touched her chest with his hand. Sara testified she was scared and that Silvey did not grab her arm as tight as he did the first time, but he held her neck the same way and she could not get away. Sara stated nobody was home during the second incident, which lasted about thirty to forty seconds, and Silvey stopped because Cindy came home.

Sara testified that she did not tell Cindy about the second incident, but she told her friend's parents what happened when she ran away about a month after the second incident occurred, but she did not give the parents details. Sara testified she first told her friend's adult sister, who called their mother, and the mother came home and called the police. Sara talked to the police and went to a foster home because

she did not want to return home, and David, who took Silvey's side, was also removed from the home. Sara explained that she was scared to tell Cindy about the second incident, because when she told her about the first incident, Cindy hit Silvey and did not call the police. Sara testified that Cindy believed her at first, but later Cindy thought she was lying and took Silvey's side and did nothing. Sara ran away after the second incident because she was scared and did not know what would happen next. Sara explained that she ran away in June because Cindy was in the bedroom, when Silvey called her to come to the restroom, and she "already knew" what he wanted. Sara testified that Cindy would not have stopped Silvey because Cindy did not believe her.

Sara testified that after she ran away, she was interviewed at the Garth House. Sara explained she told the interviewer about the incidents she had testified to, and that the interviewer "was the first one that I went into detail with." Sara testified she told the interviewer more details than she told Cindy, and she did not lie to the interviewer. After the interview, Sara was placed in a group home for a couple of years and "started to self-harm myself[]" because of the trauma. Sara received counseling to deal with her pain and was living with a family that planned to adopt her. Sara testified a nurse examined her at the hospital "a long time after[]" the incidents occurred, but she did not remember talking to the nurse. On cross-

examination, Sara testified that she told her caseworker that David raped her, but he was not charged.

Sergeant Troy Billingsley with the Beaumont Police Department testified that on June 23, 2021, he responded to a call about a runaway child. Billingsley testified that Silvey and Cindy reported eleven-year-old Sara had run away or was missing. Billingsley explained that about that same time, he was dispatched to a call from a house down the street where Sara had been playing. Billingsley left Officer Reginald Boykin Jr. with Sara's parents while he located Sara, and he spoke with the homeowner and the mother of the children Sara was playing with. Billingsley learned that Sara had made an outcry of sexual abuse to the children's mother. Billingsley explained he took a statement from the children's mother and notified his supervisor and the Texas Department of Family and Protective Services (the Department). Billingsley testified that Sara seemed upset and afraid and did not feel safe returning home and wanted to stay at her friend's house. Billingsley told Silvey and Cindy that Sara would remain with her friend due to the sexual assault allegations, and they both seemed confused about Sara not returning home.

Officer Boykin testified that he responded to the call for a runaway or missing child with Billingsley, and he spoke with Sara's parents, who were worried. Boykin explained he was wearing a body camera that recorded his observations of the scene, and the jury viewed the body camera video. Boykin testified that Silvey described

7

Sara as "being like a fully-developed woman like her mother[,]" which Boykin found odd. Boykin stated Sara's parents reported that Sara likes to lie about certain things. Boykin explained that Sara's parents seemed as though they could be under the influence of narcotics and were not always clear in answering questions. Boykin testified that Silvey seemed more nervous than Cindy, asked questions multiple times, and offered information that seemed strange, because he was not at the scene investigating and had not told Silvey about Sara's sexual allegations.

Magan Bonner, a forensic interviewer with the Garth House, a children's advocacy center, testified she interviewed Sara in June 2021. Bonner testified that Sara was uncomfortable talking about the alleged sexual abuse and wrote some things on the whiteboard in the interview room, including drugs, sexual, beating, and fight. Bonner testified that during the interview, Sara made an outcry of sexual abuse, reporting Silvey "had her suck his dick," which she referred to as "tookie." Bonner testified that Sara reported that Silvey "made her do that twice and that white puss came out of it." Bonner explained that Sara reported that "whenever he made her suck his dick[,]" Silvey "also put his hands on her breasts and wiggled them, and that happened twice, as well."

Bonner testified that Sara told her the specifics about the sexual abuse and reported that when she told Cindy about the abuse, Cindy put a knife to Silvey's

neck. Bonner testified that Sara also reported both her parents were using drugs and beat her. Bonner did not detect any red flags indicating Sara had been coached.

Tasha Idlebird testified that in June 2021, her daughter, who was over the age of eighteen, called her at work and told her Sara had told the children something. When Tasha got home, she talked to Sara. Tasha explained that Sara was "real nervous" and "didn't really wanna tell anybody[]" because "she didn't wanna get in trouble." Tasha testified that Sara did not want to go home, so Sara stayed with her until she went with the "CPS lady." Tasha explained it was hard for Sara, who cried when she left.

Lisa King, a sexual assault nurse examiner (SANE), testified that in December 2021, she performed a nonacute sexual assault exam on twelve-year-old Sara, who was referred by the Beaumont Police Department and presented with a complaint of sexual assault. King explained that the purpose of a SANE exam is for diagnosis and treatment related to sexual assault, and King stated that a nonacute exam does not include a sexual assault rape kit. King testified that a caregiver at the youth ranch where Sara was living brought her to the exam.

King testified that during her conversation with Sara regarding the history of the incident that brought her in, Sara reported she was eleven years old when her "real dad[,]" whom she identified as Silvey, raped her about a year ago, and her mom was shocked when Sara told her. King testified that Sara reported that her friends

9

helped her tell her mom, who did not believe Sara at first but then "threw hands at him." King stated that Sara reported that "[h]e made me S-U-C-K him down there[,]" in his "middle part[,]" which Sara called his "D-I-C-K." Sara also reported that "[h]e touched my chest and my middle part and that's it." King explained that Sara reported the fondling happened under her clothes. King testified that Sara stated her "middle part" was her "[p]ussy[,]" and that when it occurred, her clothes were off, and his pants were off. King stated that Sara stated "[w]hite puss[]" came out of his penis. Sara reported that the one time he touched her middle part, one finger went inside.

King testified that Sara reported the incidents occurred at her home. Sara also reported running away before being placed in foster care and being depressed and not wanting to talk to people. King testified that Sara had normal exam findings, which was consistent with her history, and she explained that most exams on sexually abused children are normal despite the sexual assault act. Concerning Sara's report that the incidents happened about a year ago, King explained that children do not always understand dates and times like adults.

Detective Leeland Keen with the Beaumont Police Department testified that in 2021, he was assigned Sara's case involving an alleged sexual assault and indecency with a child. Keen explained the case began when eleven-year-old Sara was reported as a runaway and made an outcry of sexual abuse by Silvey. Keen

10

testified that a forensic interviewer conducted an interview with Sara at the Garth House, where Sara made an outcry of sexual abuse. Keen explained that concerning a young child's understanding of time, they do good to get a child to provide a time frame which might involve holidays. Keen testified it was normal for a young child to be unable to provide the exact day the offense occurred and could even provide a different year. Keen also explained that in his experience, it was "fairly routine" for children to incrementally outcry and provide more details because they are ashamed or afraid.

During his investigation of Sara's outcry, Keen learned that Sara reported drugs, violence, and sexual abuse in the home. Keen testified that Sara reported that twice, Silvey "made her . . . perform oral copulation, put his penis into her mouth." Keen explained that Sara described ejaculation, and said "it was daddy's whip cream that came out when that happened." Keen testified that Sara stated that Silvey removed her shirt and bra and "wiggled her breasts while he was having her perform oral copulation on his penis." Keen explained that during her SANE exam, Sara disclosed abuse on more than one occasion that was consistent with what she disclosed during her Garth House interview.

Keen's investigation also included conducting voluntary interviews with Cindy and Silvey. Keen testified that Cindy was not truthful during her interview, and she changed her story a couple of times. Keen explained that Sara outcried to

11

Cindy, who "did nothing with that information." Keen testified that Cindy "in essence shut her down and didn't help her."

Keen testified that Silvey's two interviews were recorded on the same day, and the jury viewed the videos of Silvey's interviews. Keen testified that during Silvey's second interview, which Silvey initiated, Silvey framed himself as the victim and stated that Sara did something to him but he did not do anything to her. Keen testified that Silvey confessed to Sara manually manipulating his penis with her hands, which Keen found to be untruthful and "completely unreasonable." Keen testified that based on the investigation and despite Silvey never confessing to the charged offenses, he believed they had probable cause that Silvey committed aggravated sexual assault and indecency with a child against Sara.

Silvey testified in his defense. Silvey testified that he sustained an injury in 2019 and had emergency surgery to pull his left testicle out of his stomach. Silvey explained that due to complications, he had a second emergency surgery, causing him to be unable to get an erection since 2019. Regarding Sara's truthfulness, Silvey testified that Sara "would tell a fib to get away." Silvey testified that he was living with Sara, Cindy, and David in 2021, and at that time, Sara was around ten or eleven years old. Regarding Sara's allegations, Silvey explained that he told the police that he was sleeping when "I felt somebody touch me down there and I woke up and realized it was [Sara]." When asked if he was "the person that was offended by your

12

11-year-old[,]" Silvey answered, "Yes, sir." Silvey testified that Cindy sent Sara "in there to get some money[,]" and that is why Sara did sexual stuff to him.

Concerning his criminal background, Silvey testified he was convicted of rape and sodomy in 1984 when he was about 22 years old, and he explained the Innocence Project was working on his convictions. Silvey explained he spent sixteen years in prison for crimes he did not commit, because a girl he dated made an allegation against him because she got angry when he dated her sister. Silvey admitted he was a convicted sex offender, and around 2003 or 2004, he was convicted of failing to register as a sex offender. Silvey testified that he was wrongly convicted for failing to register.

David, Sara's brother, testified that he lived with Silvey, Cindy, and Sara in 2021. David testified that CPS removed him from the home when Sara accused Silvey of rape. David testified that Sara's reputation for truthfulness was bad and that she was "[v]ery untruthful all the time." David explained that he "can't stand" Sara, is angry with her for making the allegations, and that he likes Silvey, who is not his biological father.

## ANALYSIS

### *Sufficiency of the Evidence*

In each case, Silvey complains the evidence was insufficient to support his two convictions for indecency with a child and two convictions for aggravated sexual assault of a child.

We review complaints of legal insufficiency under the standard in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). *See Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). Under *Jackson*, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We defer to the jury's responsibility to resolve conflicts in testimony, weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury as factfinder is the sole judge of the weight of the evidence and credibility of the witnesses, and it may believe all, some, or none of the testimony presented by the parties. *See Metcalf v. State*, 597 S.W.3d 847, 865 (Tex. Crim. App. 2020) (*citing Febus v. State*,

542 S.W.3d 568, 572 (Tex. Crim. App. 2018); *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995)). The appellate court does not reweigh the evidence or determine the credibility of the evidence, nor does it substitute its own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

We treat direct and circumstantial evidence equally and consider the "'combined and cumulative force of all the evidence when viewed in the light most favorable to the [jury's] verdict.'" *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 16-17). Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013); *Hooper*, 214 S.W.3d at 13; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The State was not required to prove the exact dates of the offenses. Instead, the State was required to prove the offenses occurred prior to the presentment of the indictment and within the limitations period. *See Sanchez v. State*, 400 S.W.3d 595, 600 (Tex. Crim. App. 2013); *Sledge v. State*, 953 S.W.2d 253, 255-56 (Tex. Crim. App. 1997). There is no statute of limitations for the offenses of indecency with a child and aggravated sexual assault of a child. *See* Tex. Code Crim. Proc. Ann. art. 12.01(1)(B), (E).

The testimony of a child victim, standing alone and without corroboration, is sufficient to support a conviction for indecency with a child. *Id.* art. 38.07(a), (b)(1) (providing that child's testimony alone is sufficient to support a conviction for a sexual offense when the child is under the age of seventeen at the time of the alleged offense); *Chasco v. State*, 568 S.W.3d 254, 258 (Tex. App.—Amarillo 2019, pet. ref'd). Outcry testimony submitted as substantive evidence also need not be corroborated or substantiated by either the victim or independent evidence to serve as sufficient evidence to support the conviction. *See Eubanks v. State*, 326 S.W.3d 231, 241 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

A person commits the offense of indecency with a child younger than 17 years of age if the person "engages in sexual contact with the child or causes the child to engage in sexual contact[.]" Tex. Penal Code Ann. § 21.11(a)(1). Under Penal Code Section 21.11(c), "'sexual contact' means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through the clothing, of the anus, breast, or any part of the genitals of a child[.]" *Id.* § 21.11(c)(1); *see Guevara v. State*, 667 S.W.3d 422, 433 (Tex. App.—Beaumont 2023, pet. ref'd). For the offenses of indecency with a child by contact, the State needed to prove beyond a reasonable doubt that on or about February 23, 2021 and May 23, 2021, Silvey, "with the intent to arouse or gratify the sexual desire of any person, engage[d] in sexual contact with [Sara], by

16

touching the breast of [Sara], a child younger than 17 years of age[.]" *See* Tex. Penal Code Ann. § 21.11(a)(1), (c)(1).

A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the mouth of a child by the sexual organ of the actor and the victim is younger than 14 years of age. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(ii), (2)(B). For the offenses of aggravated sexual assault of a child, the State needed to prove beyond a reasonable doubt that on or about February 23, 2021 and May 23, 2021, Silvey: "did then and there intentionally or knowingly cause the sexual organ of the Defendant to contact the mouth of [Sara], a child who was then and there younger than 14 years of age[.]" *See id.*

Sara testified that during the first incident, Silvey "made me suck his penis[]" and that she had his penis in her mouth. Sara testified that the second incident occurred about a week later when Silvey made "me suck his penis" and "touched my chest[.]" Sara explained that she did not have a shirt or bra on when Silvey touched her chest with his hand. Sara testified she was eleven years old when the offenses occurred in 2021 and that they occurred over the course of a month before she ran away in June 2021, but she did not provide the exact date the offenses occurred. That said, it is clear that the offenses, which do not have a statute of limitations, occurred before the present of the indictment. *See* Tex. Code Crim. Proc.

17

Ann. art. 12.01(1)(B), (E); *Sanchez*, 400 S.W.3d at 600; *Sledge*, 953 S.W.2d at 255-56.

Sara's testimony alone was sufficient to support one of Silvey's convictions for indecency with a child by contact, which she testified occurred when he touched her breast during the second incident, and his two convictions for aggravated sexual assault of a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Chasco*, 568 S.W.3d at 258. Additionally, Sara's testimony was corroborated by Bonner, who testified about Sara's outcry during her forensic interview. *See Eubanks*, 326 S.W.3d at 241. Bonner testified that Sara reported Silvey "had her suck his dick[]" twice. Bonner also testified that Sara reported that Silvey "also put his hands on her breasts and wiggled them, and that happened twice, as well." Bonner's testimony, standing alone, is sufficient to support Silvey's two convictions for aggravated sexual assault of a child and his two convictions for indecency with a child by contact, despite Sara's failure to testify that Silvey put his hands on her breast twice. *See Eubanks*, 326 S.W.3d at 241. Bonner's outcry testimony did not need to be corroborated or substantiated by either Sara or independent evidence to serve as sufficient evidence to support the convictions. *See id.*

Additionally, Keen viewed Sara's forensic interview and testified that Sara reported Silvey made her put his penis in her mouth on two occasions and that he "wiggled her breasts while he was having her perform oral copulation on his penis."

18

King also corroborated Sara's testimony when she testified that during the SANE exam, Sara reported that Silvey touched her chest under her clothes and made her "S-U-C-K him down there[,]" which Sara called his "D-I-C-K." Keen confirmed that Sara disclosed abuse on more than one occasion during her SANE exam that was consistent with her forensic interview.

The jury, in its role as factfinder, could have found Sara's testimony was credible. Viewing the evidence in the light most favorable to the verdict and deferring to the jury's authority to determine the credibility of the witnesses and the weight to give their testimony, we conclude that a reasonable factfinder could have found the essential elements of the two offenses of indecency with a child by contact and the two offenses of aggravated sexual assault of a child beyond a reasonable doubt. *See* Tex. Penal Code Ann. §§ 21.11(a)(1), (c)(1), 22.021(a)(1)(B)(ii), (2)(B); Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Metcalf*, 597 S.W.3d at 865; *Brooks*, 323 S.W.3d at 902 n.19; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13; *Chasco*, 568 S.W.3d at 258; *Eubanks*, 326 S.W.3d at 241. Having concluded the evidence was sufficient to support Silvey's two convictions for indecency with a child by contact and two convictions for aggravated sexual assault of a child, we overrule Silvey's first issue in each case.

## *Outcry Witness*

In issue two, Silvey complains that in each case, the trial court abused its discretion by admitting inadmissible hearsay through Bonner, who was not the proper outcry witness. Silvey contends Cindy was the proper outcry witness because she was the first person over eighteen to whom Sara claimed to have been sexually abused. Silvey argues that Sara providing more details about the offenses to Bonner did not disqualify Cindy as the proper outcry witness, and Silvey contends Cindy was available to testify. The State argues that Bonner was the first person to whom Cindy provided specific details concerning how, when, and where the sexual abuse occurred. The State contends Cindy was not the proper outcry witness because there is no evidence in the record showing what Sara told Cindy about the first sexual assault, and Sara did not tell Cindy about the second sexual assault.

We review a trial court's decision to designate a witness as an outcry witness under an abuse of discretion standard. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Rosales v. State*, 548 S.W.3d 796, 806 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). An appellate court will uphold the trial court's designation of the witness if the decision is supported by the evidence. *Garcia*, 792 S.W.2d at 92. We will not find that an abuse of discretion occurred if the trial court's decision concerning the designation of the outcry witness was a decision that falls within the zone of reasonable disagreement. *Rosales*, 548 S.W.3d at 806.

20

Under Rule 802 of the Texas Rules of Evidence, hearsay is not admissible unless it falls within an exception to the hearsay rule. Tex. R. Evid. 802; *Hayden v. State*, 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Article 38.072 provides a statutory exception to the rule against hearsay for prosecutions of certain sexual crimes committed against a child younger than fourteen years of age. *See* Tex. Code Crim. Proc. Ann. art. 38.072 §§ 1, 2(b); *Hayden*, 928 S.W.2d at 231. Article 38.072 allows the admission of the child victim's out-of-court statement so long as that statement is a description of the offense and is offered into evidence by the first adult the victim told of the offense. *Sanchez v. State*, 354 S.W.3d 476, 484-85 (Tex. Crim. App. 2011).

As the proponent of the evidence, the State has the burden to establish the elements of article 38.072 for the testimony to be admissible. *Hayden*, 928 S.W.2d at 231. Specifically, the proponent must establish that the statements (1) were made by the child against whom the offense was allegedly committed; and (2) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. *See* Tex. Code Crim. Proc. Ann. art. 38.072 § (2)(a). The statute requires the trial court to conduct a hearing outside the presence of the jury to determine whether the victim's out-of-court statement is reliable based on the time, content, and circumstances of the statement. *Id.* § 2(b)(2); *Sanchez*, 354 S.W.3d at 484-85. Because the child's statement must describe the

alleged offense in some discernible manner and "be more than words which give a general allusion that something in the area of child abuse was going on[,]" the evidence must clearly show that the child described the offense to the outcry witness. *Garcia*, 792 S.W.2d at 91. The proper outcry witness is the first adult to whom the child tells the details of how, when, and where the sexual abuse occurred. *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd).

The trial court conducted an outcry witness hearing, during which the State explained they could not offer Cindy as an outcry witness because she had been uncooperative, in contact with Silvey, and had changed her story multiple times. The State explained it was unable to put Cindy on as a witness even if she was available because it did not know whether she would be truthful, and it could call its investigator to testify to such. The trial court noted that the State was in a difficult position because ethics prevented it from putting on a witness it knows might lie. Defense counsel stated that through his own investigation, he "kinda" agreed with the State.

During the outcry witness hearing, Bonner testified that she interviewed eleven-year-old Sara, who reported sexual abuse. Bonner explained that it was hard for Sara to talk about the abuse, so she initially wrote things on the whiteboard before she started talking. Bonner testified that she knew Sara had previously told Cindy about the abuse, but Bonner did not know how much detail Sara disclosed to Cindy.

22

Bonner explained that Sara provided her with specific details about the sexual acts. Bonner testified that Sara told her Silvey made "her suck his dick and that happened twice." Bonner testified that Sara reported that while Silvey "was making her suck his dick, he was also touching her breast . . . and that happened twice, as well[.]" Bonner explained that Sara stated, "white puss came out of his dick and was on top of his dick." Bonner testified that Sara stated Silvey called the white puss "[w]hipped cream."

Defense counsel objected to the State calling Bonner as the outcry witness. The trial court noted that Sara had testified before the jury and explained that she told her friend and her friend's mother something had happened but did not give them any specifics. The trial court explained that if you take Cindy out of the picture, Bonner is the appropriate outcry witness. The trial court overruled defense counsel's objection and allowed Bonner to testify.

Prior to the outcry witness hearing, Sara testified about her outcry statements, explaining that she only told Cindy about the first incident a month after it occurred. Sara then explained that she "wasn't the exact one to tell" Cindy, because her friends told Cindy, and because Cindy did not believe Sara's friends, Sara had to "step up and say something[.]" Sara also testified that when she told her friend's parents about the second incident, she did not give them details. That said, the record shows that Sara's outcry statements to Bonner included specific details of how, when, and

23

where the sexual abuse occurred. *See Garcia*, 792 S.W.2d at 91; *Reyes*, 274 S.W.3d at 727. We hold that the record does not show that Sara described the abuse in a discernible manner when she outcried to Cindy about the first incident or when she outcried to her friend's parents about the second incident. *See Garcia*, 792 S.W.2d at 91; *Reyes*, 274 S.W.3d at 727. Accordingly, we conclude the trial court did not abuse its discretion by designating Bonner as the proper outcry witness. *See Garcia*, 792 S.W.2d at 92. We overrule issue two in each case.

## CONCLUSION

Having overruled both of Silvey's issues in each case, we affirm the trial court's judgments in trial cause numbers F22-39790-0, F22-39791-0, F22-39792-0, and F22-39793-0.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on November 26, 2025
Opinion Delivered December 10, 2025
Do Not Publish

Before Johnson, Wright and Chambers, JJ.

24